[Cite as *State v. Prickett*, 2017-Ohio-8128.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2017-01-010 |
| | : | O P I N I O N |
| - vs - | | 10/9/2017 |
| | : | |
| WILLIAM PRICKETT, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case Nos. 16 CRB 04690-A and 16 CRB 04691-A

Neal D. Schuett, Hamilton City Prosecutor, 345 High Street, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, William Prickett, appeals from his misdemeanor convictions in the Hamilton Municipal Court for theft.

{¶ 2} On November 21, 2016, Prickett was charged by complaint in Case Nos. 16 CRB 04690-A and 16 CRB 04691-A with two separate counts of theft in violation of R.C. 2913.02, both misdemeanors of the first degree.  The charges arose out of an investigation

into the theft of cigarettes from two different convenience stores in Hamilton, Butler County, Ohio on November 7 and 8, 2016.

{¶ 3} Prickett entered a not guilty plea to the charges and a bench trial commenced on January 4, 2017. At this time, Prickett stipulated that surveillance videos of the thefts taken from the two convenience stores were authentic and that the person depicted on the videos did not have authorization to remove the cigarettes from the stores without paying. Prickett maintained, however, that he was not the individual depicted on the surveillance videos.

{¶ 4} At trial, the state presented testimony from Hamilton Police Officers James Gross and Mark Trenum. Gross testified he investigated the theft of cigarettes from Minnick's Drive-Thru that occurred on November 7, 2016, and the theft of cigarettes from United Dairy Farmers ("UDF") that occurred on November 8, 2016. At both locations, a white male wearing a baseball cap entered the convenience store and sought to purchase cigarettes from a clerk. The male handed a credit card over to the clerk, and when authorization of the card was declined, the male fled the store with the cigarettes. Surveillance videos from both Minnick's and UDF captured the events, and both stores turned the videos over to Gross to aid in the investigation.

{¶ 5} Gross spoke with clerks from both convenience stores, but no one was able to positively identify Prickett as the individual who committed the thefts. Gross compared the images obtained from the surveillance videos to a booking photograph of Prickett and determined that Prickett was the man who had taken the cigarettes from both stores. Gross also spoke with Officer Trenum, who had observed a white male fleeing from the area near UDF on November 8, 2016, immediately after the theft. Following his investigation, Gross signed a warrant for Prickett's arrest.

{¶ 6} Trenum testified that he was on duty on November 8, 2016, and was driving his

police cruiser near the UDF store when the theft occurred. When the report of the theft came over dispatch, Trenum responded. He received a description of the suspect as a "white male with a scruffy beard * * * wearing * * * jeans and like a gray or dark colored shirt and then a dark colored hat." As Trenum checked the area near the store, he saw a male matching this description. When the male spotted Trenum's cruiser, the male took off running between two houses. Trenum was unable to pursue the male, due to the heavy flow of traffic.

{¶ 7} Trenum spoke with the manager at the UDF store, who provided him with a recording of the theft. Trenum testified that the individual on the surveillance video was the "same suspect" that had run away from his cruiser. Trenum admitted on cross-examination, however, that he only saw the suspect's face "from a distance" before the suspect fled. Nonetheless, after viewing Prickett's booking photograph and still photographs taken from the surveillance video of Minnick's, Trenum opined that Prickett "appear[ed] to be the same individual * * * based off [the] generic description."

{¶ 8} Following Trenum's testimony, the court accepted into evidence the two surveillance videos, Prickett's booking photograph, and still photographs taken from Minnick's surveillance video. The court heard closing arguments from the parties and took the matter under advisement. On January 6, 2017, the trial court found Prickett guilty of both theft offenses, stating:

> THE COURT: I reviewed yesterday the * * * videotaped evidence in the case * * *. Also, I looked back at the photographic evidence in the case. And after looking at that, when I looked at the photographic evidence I was firmly convinced that * * * it was the defendant's picture that was on all three of those pictures that are set forth on the one exhibit. One of them being the booking photo and the other two being the defendant right as he was committing the rob – um – theft at the Minnick's. I went back and I looked and tried to consider everything [defense counsel] argued to me and make sure that I wasn't making a mistake when I identified the defendant from the photograph. Nothing [defense counsel] argued to me * * * made me think anything other than [Prickett] might have changed his hair up a little bit, his facial hair.

Easy enough to do. It didn't change the fact that I was firmly convinced that he was the one in that photograph and I'm finding him to be Guilty on both counts.

The court sentenced Prickett to 180 days in jail on each offense, to be served consecutively to one another. However, it awarded Prickett 46 days of jail-time credit on each count, stayed the remaining 134 days on each count, and placed Prickett on non-reporting probation for two years. The court also ordered Prickett to pay fines, court costs, and restitution to the victims.

{¶ 9} Prickett appealed his conviction, raising two assignments of error. As the assignments of error are related, we will address them together.

**Sufficiency and Manifest Weight of the Evidence**

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT MR. PRICKETT [OF] TWO COUNTS OF THEFT IN VIOLATION OF R.C. 2913.02.

{¶ 12} Assignment of Error No. 2:

{¶ 13} MR. PRICKETT'S CONVICTION[S] [WERE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} In his first and second assignments of error, Prickett argues that his convictions for theft are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 15} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No.

- 4 -

CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 16}** A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶ 17}** Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 18}  Prickett was convicted on two counts of theft in violation of R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

{¶ 19}  Prickett contends the state presented insufficient evidence that a theft offense occurred at Minnick's or UDF.  He further contends that even if theft offenses had occurred at the respective stores, the state failed to establish that he was the individual who committed the offenses.  However, after reviewing the record, weighing inferences and examining the credibility of the witnesses, we find Prickett's convictions for theft are supported by sufficient evidence and are not against the weight of the evidence.  The state presented testimony and evidence from which the trier of fact could have found all the essential elements of the offenses proven beyond a reasonable doubt.

{¶ 20}  Prickett stipulated that the person depicted on the surveillance videos from Minnick's and UDF did not have authorization to remove the cigarettes from the stores without paying.  "Stipulations or agreements by an accused in the course of a criminal trial are binding and enforceable."  *State v. Lang*, 12th Dist. Brown No. CA2011-03-007, 2011-Ohio-5742, ¶ 11.  This stipulation, combined with the surveillance videos and Gross' testimony, demonstrated that property belonging to Minnick's and UDF, respectively, was taken without Minnick's or UDF's consent.  Moreover, the videos demonstrated that the perpetrator of the offenses knowingly obtained and exerted control over the property when he grabbed the cigarettes and fled from the store without paying for them.

{¶ 21}  The evidence introduced at trial also established beyond a reasonable doubt that Prickett was the perpetrator of the thefts.  The surveillance videos from UDF and

Minnick's captured the perpetrator's face and body. After comparing these images to Prickett's booking photo, Gross identified Prickett as the perpetrator of the thefts. Further, after viewing the surveillance footage and booking photo, Trenum testified Prickett "appear[ed] to be the same individual" he observed running away from his cruiser on November 8, 2016, following the theft at UDF. Given the testimony and evidence before it, the trier of fact was entitled to find that Prickett committed the two theft offenses. Despite Prickett's arguments to the contrary, the photographic evidence "firmly convinced" the trier of fact that Prickett committed the thefts at Minnick's and UDF. As the trier of fact, the trial court "was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *State v. Patterson*, 12th Dist. Butler No. CA2001-09-222, 2002-Ohio-5996, ¶ 12. Prickett's convictions are not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence offered by the prosecution. *See State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 22} Accordingly, given the evidence presented, we find that the trial court did not lose its way and create such a manifest miscarriage of justice that Prickett's convictions for theft must be reversed and a new trial ordered. As Prickett's convictions were not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the court's finding of guilt. *See Hart*, 2012-Ohio-1896, ¶ 43. Prickett's first and second assignments of error are overruled.

**Judgment Entry – Consecutive Sentences**

{¶ 23} Having reviewed the record, we notice and raise, sua sponte, an error in the trial court's Judgment Entry of Conviction for Case No. 16 CRB 04691-A. At Prickett's January 6, 2017 sentencing hearing, the trial court ordered that Prickett's 180-day jail sentence in Case No. 16 CRB 04691-A run consecutively to his 180-day jail sentence in Case No. 16 CRB 04690-A. However, the Judgment Entry of Conviction for 16 CRB 04691-

A fails to specify the consecutive nature of the sentence.

{¶ 24} R.C. 2929.41(B)(1) provides that "[a] jail term or sentence of imprisonment for a misdemeanor shall be served consecutively to any other person term, jail term, or sentence of imprisonment when the trial court specifies that it is to be served consecutively * * *." R.C. 2929.14(C)(4), the statutory provision authorizing the imposition of consecutive *prison terms*, is not applicable, and "[t]he trial court [is] not required to make the R.C. 2929.14(C)(4) findings prior to ordering consecutive service of the misdemeanor *jail terms*." (Emphasis added.) *State v. Alexander*, 8th Dist. Cuyahoga No. 102708, 2016-Ohio-204, ¶ 7.

{¶ 25} As the trial court properly imposed consecutive misdemeanor jail terms at the sentencing hearing, the court may issue a nunc pro tunc entry "to correct [its] clerical mistakes so that the sentencing entry accurately reflects what the court actually decided." *State v. Stewart*, 12th Dist. Butler No. CA2010-08-215, 2011-Ohio-2211, ¶ 15, citing *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13. *See also State v. Goodwin*, 12th Dist. Butler CA2016-05-099, 2017-Ohio-2712, ¶ 45.

{¶ 26} Judgment is affirmed in part, reversed in part, and the matter remanded for the limited purpose of issuing a nunc pro tunc sentencing entry.

S. POWELL and RINGLAND, JJ., concur.