[Cite as *State v. Babb*, 2023-Ohio-3411.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-11-027 |
| | : | O P I N I O N |
| - vs - | | 9/25/2023 |
| | : | |
| DAVID A. BABB, | : | |
| Appellant. | : | |

APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. CRB 2200357

Craig A. Newburger, for appellant.

Sarah C. McMahon, City of Wilmington Special Prosecutor, for appellee.


**HENDRICKSON, J.**

{¶ 1} Appellant, David A. Babb, appeals from his conviction in the Clinton County Municipal Court for aggravated menacing. For the reasons discussed below, we affirm his conviction.

{¶ 2} On June 19, 2022, appellant approached a 15-year-old Kroger employee at the Wilmington, Clinton County, Ohio location. The employee, Emma, worked as a grocery bagger and cart collector. Emma was in the process of putting away an electrical cart when

appellant, a 58-year-old man who did not work at the store and whom Emma had never met before, approached and offered unsolicited instructions on how to back the cart up and plug it into the wall. Appellant informed Emma that he used to drive tractors.

{¶ 3} Following this encounter, Emma went about her job duties. Approximately twenty minutes later, Emma went into the parking lot to collect shopping carts. Appellant was seated in his car in the parking lot. He called for Emma to come talk to him. Emma went closer to appellant, but kept a "good distance" from him as appellant caused her to feel "a little uncomfortable." Appellant started talking about how he was a driving instructor who would take his students to the graveyard to practice driving before taking them out on the highway. He asked Emma her age and whether she was in driving school, telling her that she did not need to test for her license. He then began to talk about how he was once held at gunpoint, how he "did karate and stuff," boasted that he held a 200-pound person by his throat, and how he was going to kill people. Though appellant did not make any direct threats to harm her, appellant's comments made Emma feel scared and afraid that he wanted to hurt her.

{¶ 4} Appellant's conversation with Emma lasted approximately thirty minutes. Though Emma attempted to leave the conversation multiple times so that she could return to her work duties, appellant persisted in talking with her. Emma was eventually able to extract herself from the conversation and she took the carts inside the store. When she exited the store moments later to gather more carts, she noticed that appellant remained in the parking lot and was staring at her. He continued to stare at her the whole time she collected the carts, making her feel scared and uncomfortable. When Emma went back into the store, she called her dad to come pick her up and talked to her manager about her encounter with appellant.

{¶ 5} Emma's manager, Rebecca Christensen, confirmed that Emma was in a

"sheer panic" and was very upset following the incident with appellant. The police were called to Kroger. From Kroger security camera footage, Officer Connor Combs with the Wilmington Police Department was able to identify appellant and corroborate Emma's version of events.

{¶ 6} Appellant was subsequently charged with aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree. He pled not guilty to the charge and a bench trial was held on September 12, 2022. After hearing testimony from Emma, Christensen, and Officer Combs, the trial court found appellant guilty as charged. Appellant was sentenced to a suspended 90-day jail term, two years of supervised community control, and fined $500. He was also trespassed from the Wilmington Kroger and ordered to have no contact with Emma.

{¶ 7} Appellant appealed his conviction, raising the following as his sole assignment of error:

{¶ 8} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION.

{¶ 9} Appellant argues his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence as the state failed to prove that he knowingly caused Emma to believe he would cause serious physical harm to her.

{¶ 10} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul,* 12th Dist. Fayette No.

CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 12} Appellant was convicted of aggravated menacing in violation of R.C.

2903.21(A), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B). "Serious physical harm to persons" includes the following:

> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(b)-(e).

{¶ 13} "In order to prove aggravated menacing, the state is not required to show that the offender is able to carry out the threat or even that the offender intended to carry out the threat."  *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 33, citing *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 17. "The state must, however, show that the victim had a subjective belief of fear of serious physical harm."  *Id.*  "Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence."  *Id.*

{¶ 14} After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that appellant's conviction for aggravated menacing was not against the manifest weight of the evidence and was supported by sufficient evidence.  The state presented testimony and evidence from which the trier of fact could have found all the

essential elements of the offense proven beyond a reasonable doubt. Emma, a 15-year-old girl, testified that appellant, an unknown middle-aged man, approached her multiple times in a short period of time, and spoke with her about graveyards, a gun, knowing karate, holding up a 200-pound person by his throat, and killing people. He then stared at her while she tried to continue her job duties. Appellant's conduct was inappropriate and disturbing. His conduct and comments caused Emma to fear for her well-being, as the interaction occurred in the Kroger parking lot where Emma was isolated from her coworkers. Emma feared that appellant would cause her serious physical harm, as evidenced by the fact that she was in a "sheer panic" and rushed to call her father to pick her up from work. Regardless of what appellant's purpose was in engaging Emma in a conversation about being held at gunpoint, doing karate, holding a man up by the neck, and killing people, appellant was aware that his conduct would cause a young girl alone in a commercial parking lot to fear that he wanted to seriously hurt her.

{¶ 15} Accordingly, given the evidence admitted at trial, we find that appellant's conviction for aggravated menacing was supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

{¶ 16} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.