[Cite as *State v. McMurray*, 2021-Ohio-3562.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-08-013 |
| Appellee, | : | O P I N I O N<br>10/4/2021 |
| | : | |
| - vs - | : | |
| | : | |
| JEREMIAH J. McMURRAY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 2019-CR-013070

Martin P. Votel, Preble County Prosecuting Attorney, and Gractia S. Manning, Assistant Prosecuting Attorney, for appellee.

The Hobbs Law Office, and H. Steven Hobbs, for appellant.

**M. POWELL, J.**

{¶ 1}  Appellant, Jeremiah McMurray, appeals his conviction in the Preble County Court of Common Pleas for felonious assault.  He asserts that the evidence presented by the state was insufficient to support his conviction and that his conviction was against the manifest weight of the evidence.

{¶ 2}  In the fall of 2018, appellant was employed as an actor in a part-time, seasonal

capacity at the Lewisburg Haunted Cave. The Lewisburg Haunted Cave operates as a "haunted" attraction within an underground limestone cave and is open certain evenings during September and October. Patrons pay to tour the cave, which is furnished to produce fright, features effects such as strobe lighting and artificial fog, and is staffed by actors instructed to frighten patrons. Patrons are strictly prohibited from touching actors, and actors are instructed to make an "X" by crossing their arms toward the security cameras installed in the cave to signal if there is a problem in the cave.

{¶ 3} Shortly before midnight on October 27, 2018, Matthew Reaver and Teirra Brady, along with Zackary Thompson and Tabitha Thompson (née Irwin) entered the haunted cave. The two couples were friends and had spent most of the evening together consuming alcoholic beverages and celebrating Brady's birthday. During their tour of the cave, the group entered a portion known as the "Light Maze," a disorienting labyrinth staffed that evening by Justin Ginter, William Collins, and appellant. While in the maze, one or more members of the group made some form of contact with the cave employees. Appellant signaled the security cameras multiple times, while Ginter angrily confronted the group and told them not to touch the employees.

{¶ 4} Shortly thereafter, appellant, Ginter, and Collins approached the group and demanded they leave the maze. During this confrontation, Ginter and Reaver were arguing when Ginter put his forearm up and made contact with Reaver's face. Reaver shoved Ginter backwards, then Ginter and Reaver began to grapple with one another before appellant lunged at Reaver, and all three fell to the ground. Brady joined the fray and put appellant in a headlock. Appellant himself had Reaver in a headlock. At this point, the trial testimony diverged about what transpired. Reaver and Brady testified that after they and appellant separated, appellant got up and tackled Reaver from behind. Conversely, appellant maintained that his initial tackle of Reaver was the only contact between the two. Appellant

asserts that he grabbed Reaver's shoulders and neck as Ginter twisted Reaver's arm, the combination of which led to Reaver's injuries. None of the other witnesses saw what caused Reaver's injuries, and the cave's surveillance video recording captured only the beginning of the altercation.

{¶ 5} Following Reaver's injuries, appellant approached Zackary Thompson and yelled, "I'm gonna fuck you up like I fucked your friend up." Appellant was visibly upset about the situation, attempted to reapproach Reaver and Brady, and had to be restrained by another employee. Eventually, Reaver was assisted in leaving the cave, and was transported to the Kettering Health Emergency Center in Eaton and ultimately to Grandview Medical Center in Dayton. Reaver suffered a fractured fibula, displaced tibia, skin penetration by the bone, and significant bleeding. He underwent surgery that morning and later required a second surgery.

{¶ 6} Appellant was indicted in August 2020 for one count of felonious assault and one count of aggravated assault. The matter proceeded to a bench trial. Reaver, Brady, both Zachary and Tabitha Thompson, Ginter, Collins, Lewisburg Haunted Cave manager Jarred Huist, and Preble County Sheriff's Deputy Stephen Bratton testified for the state. Lewisburg Haunted Cave owner Mark Schaefer testified for appellant, and appellant testified on his own behalf. The court found appellant guilty of felonious assault in violation of R.C. 2903.11(A)(1). Appellant was sentenced to three years of community control.

{¶ 7} Appellant now appeals his conviction for assault, raising one assignment of error:

{¶ 8} THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO CONVICT THE DEFENDANT AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} Appellant argues that his conviction for felonious assault is not supported by

sufficient evidence and is against the manifest weight of the evidence because the state failed to prove that he acted "knowingly" or that his actions "caused" the victim's serious physical harm.

{¶ 10} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Billingsley*, 12th Dist. Butler Nos. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 14, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} Conversely, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to

decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Barnes* at ¶ 81, citing *Thompkins* at 387.

{¶ 12} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins*, 78 Ohio St.3d at 386. Nevertheless, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Billingsley*, 12th Dist. Butler No. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15.

{¶ 13} R.C. 2903.11(A)(1) states in part, "No person shall knowingly * * * [c]ause serious physical harm to another." Felonious assault thus requires proof of a knowing mental state and a causation element of serious physical harm. *State v. Harris*, 12th Dist. Butler No. CA2018-02-037, 2018-Ohio-5292, ¶ 10. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 14} It is clear that Reaver suffered "serious physical harm." Where injuries to the victim are serious enough to cause him to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5). *State v. Tolle*, 12th Dist. Clermont No. CA2014–06–042, 2015-Ohio-1414, ¶ 12. Additionally, where the assault causes a bone fracture, the element of serious physical harm is met. *Id.* Here, as the trial court noted, Reaver had a bone fracture, among other injuries, and required two surgeries and missed four months of work to recuperate.

{¶ 15} Appellant contends that his actions were not "knowing," but reckless. Further,

he argues that the evidence presented was inadequate to show that his actions caused Reaver's injuries.

{¶ 16} "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Magee*, 12th Dist. Clermont No. CA2019-11-083, 2020-Ohio-4351, ¶ 47, quoting *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 143. An accused need not foresee the precise consequences of his conduct. *Id.*, citing *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 46. "To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct." *Id.*

{¶ 17} Appellant knowingly tackled Reaver. The surveillance video shows and the testimony at trial corroborates that there was an aggressive verbal argument, as appellant, Ginter, and Collins confronted the two couples. When Ginter made contact with Reaver, the argument turned into a physical struggle, into which appellant readily inserted himself. Appellant pushed his way past Brady and leapt at Reaver. Based on these circumstances, it is more than reasonable to believe that appellant was aware that his conduct would probably cause harm to Reaver. *See* R.C. 2901.22(B). Indeed, by all accounts that was his intention.

{¶ 18} Appellant's actions caused Reaver's injuries. Though there is a factual dispute as to how many times he did so, it is undisputed that appellant tackled Reaver at least once and was a participant in an altercation in which Reaver sustained injury. The "natural, reasonable, and probable" consequence of tackling someone is to injure him. *Magee* at ¶ 47. Tackling someone in a dark cave with an uneven floor, disorienting strobe lights, thick artificial fog, and a maze of wire fences presents an even greater risk of serious injury to the person being tackled than ordinary conditions. A broken leg, though by no means the only foreseeable consequence, is well within the scope of risk created by tackling

someone under these circumstances.  *Id.*

{¶ 19} After reviewing the record, we find that appellant's conviction for felonious assault is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence from which the trial court judge, acting as the trier of fact, could have found all the essential elements of the offense proven beyond a reasonable doubt.  *See State v. Byrd*, 12th Dist. Warren No. CA2019-07-073, 2020-Ohio-3073, ¶ 21.  Additionally, the evidence does not weigh heavily in favor of acquittal.

{¶ 20}  Appellant's assignment of error is overruled.

{¶ 21}  Judgment affirmed.

PIPER, P.J., and BYRNE, JJ., concur.